# Andrew Mann, Executor, etc., v. John C. Martin, Executor, etc.

1. ACCOUNTING—*Where Identity of Property is Lost.*—Where a person who is entitled to the use of personal property for life, necessarily commingles it with other property subsequently received from other sources, and its identity is thereby lost, upon an accounting the amount thereof should be ascertained as nearly as possible, but exactness is not required.

2. WILLS—*Construction of, by Trial Court in This Case Sustained.*—The court reviews the evidence and holds that the decree herein substantially carries out the intentions of the parties, as disclosed by their wills, and that it is responsive to the merits of the cause.

**Bill,** for the construction of a will and an accounting. Error to the Circuit Court of Douglas County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the November term, 1896. Affirmed. Opinion filed February 25, 1897.

THOMAS W. ROBERTS and ECKHART & MOORE, attorneys for plaintiff in error.

JOE H. WINKLER, attorney for defendant in error.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The defendant in error filed his bill in chancery against plaintiff in error and therein alleged that on the 28th of September, 1882, Bernard Truax made his last will and testament whereby he disposed of his estate as follows:

"First. I give and bequeath to my wife, Lydia Truax, all of my property, both real and personal, now owned by me and in my name, together with all moneys on hand or in bank, to have the free and unrestricted use, possession and benefit of the same so long as she may live, obligating her to do and perform the matters and things hereinafter set forth, to wit:

To pay the girl now living with us, to wit, Judy Braden, when she has become of age, $500, and further, that she pay all of my just debts and funeral expenses, etc.

And it is my further wish and will that at the death of my wife that my executor sell at public vendue all of said property, left by her, both real and personal, on a credit of twelve months, securing the same fully by personal security and mortgage, and when said proceeds are collected to divide the same equally between my brothers and sisters, to wit (here naming them):"

That said Bernard Truax died October 27, 1882, and said will was duly probated, the said John C. Martin, complainant, being appointed executor, and that he turned over all the property, real and personal, of the testator to the said Lydia Truax for her use during life. That said Lydia paid the funeral expenses and the debts, and also the legacy of $500 to said Judy Braden when she came of age. That the

said testator owned at the time of his death 165 acres of land, had to his credit in bank $2,278.74, and owned live stock and other personal property of the value of $1,000. That the said Lydia took possession of all of said property real and personal, and enjoyed the same according to the said will until September 9, 1894, when she died, leaving a will wherein she provided as follows :

"First. I give and bequeath to Lydia Sweezy $500 and my wearing apparel and family bible, she being the daughter of Andrew Mann.

Second. I give to Lydia Sipes the sum of $700, she being the daughter of Valentine Mann and Susanah Mann.

And Lydia Underwood the sum of $700, she being the daughter of Bernard Mann and Maria Mann, and $700 to Lydia Alexander, she being the daughter of Ignatius Small and Esther Small. The remainder to be divided equally between Lydia Sipes, Lydia Underwood and Lydia Alexander.

This being money received by me, Lydia Truax, the wife of Bernard Truax, deceased, from my father, Andrew Mann, deceased, and from my brother, Michael Mann, deceased.

And it is my further wish and will that at my death that my executor proceed to collect and pay over the moneys to the aforesaid Lydia Sweezy, Lydia Sipes, Lydia E. Underwood and Lydia Alexander the aforesaid amount of money received, being about $3,000 and interest accrued thereon since received."

That Andrew Mann was appointed executor under said will and filed his inventory showing the personal estate of said Lydia Truax, as follows: $747.18 in chattels, $412 in cash, $5,573.13 in promissory notes, total, $6,737.31, and alleging that of this sum $3,737.31, being the excess over the sum really owned and disposed of by her in her will, should be accounted for to the complainant as the executor of said Bernard Truax, but that the said Martin, executor of said Lydia Truax, refused to so account. Complainant therefore asked for a construction of the will of said Barnard Truax, and that said Martin as such executor might be required to account and pay over, etc.

The answer denied that the complainant was entitled to the relief sought, though admitting many of the facts alleged in the bill.

Upon a hearing the court entered a decree according to the prayer of the bill for $3,133.74, as a sixth-class claim, to be paid in due course of administration. The defendant executor has brought the record here by writ of error, and seeks a reversal of the decree.

It appears that Bernard Truax left 165 acres of land, which said Lydia occupied by herself or by tenants up to her death, that the rental value of the same was $3 per acre per annum, and that she received in cash, and in the proceeds of chattels, from his estate, $3,378.74; that she paid out $785.10 upon said legacy to said Judy Braden, and upon debts and funeral expenses of said Bernard, including the sum of $60 for a monument.

It appears also that in the year 1857, which was a few years after her marriage to said Bernard, she received from her father's estate the sum of $800, which she placed in the hands of her said husband, who used it in the improvement of the farm, which was their home up to the time of his death, and hers thereafter till her death; that a short time before his death she received from her brother's estate $270, of which $245 was deposited in bank to the husband's credit, and that after his death, viz., in the years 1886 and 1888, she received from her father's estate $2,696.43. For about two years after her husband's death she conducted the farm herself, after that time she rented it and boarded with the tenant in part payment of the rent. The income of the farm during that time was about $300 per annum, in addition to her board and the use of the room reserved by her. Her outlay for clothing, etc., was about $100 per annum.

An extended argument has been presented on behalf of plaintiff in error to induce a conclusion, different from that of the Circuit Court, and many authorities are cited, but in this case, as in most others involving a construction of testamentary provisions, not much light is shed by other adjudged cases, because the language construed in them is more or less unlike that under consideration.

In using and enjoying the personal property Mrs. Truax necessarily commingled it with what she subsequently received from other sources, and its identity is thereby lost, but upon an accounting in respect thereto, the amount thereof must be ascertained as nearly as possible.

As already stated, the personal property she so received from the estate of her husband amounted to $3,378.74, and this sum, less the $245 received by her husband a short time before his death, is the sum found due by the decree. It is highly probable, indeed quite certain, that the income from the farm was more than enough for her support, and is not at all unreasonable to estimate that the income from the personal property with the surplus from the rent of the farm was more than sufficient to make up the sum she expended in paying the legacy and the debts, $785.10. This is quite a liberal view to take of the matter, and leaves, as properly belonging to her separate estate, $3,604.57. Turning to her will, it is evident that she had no purpose to dispose of anything except what she had derived from her father and brother, "being about three thousand dollars, and interest accrued thereon, since received," as explicitly stated in the last quoted clause of said will.

This estimate agrees very well with the facts. She received from her brother, just before her husband's death, $245. She received from her father's estate, in 1886 (or '87), $790.19, and in July, 1888, from the same source, $1,901.24 —in all $2,936.43. It is not likely that she received more in the way of interest on these amounts than would make up the difference between the total and the amount left to her estate by this decree—some $668—unless she had it all constantly at use, which is not very probable.

Looking at the circumstances of the parties, it is easy to see why they so disposed of their property. They were married in 1857.

He then had the land referred to, and not long after she received $800, which was used to improve it. They lived together on the land until 1882, when he made his will just before he died. They then had no children, but each had

relatives. It was but natural and proper that after she was done with the real and personal property belonging to him it should revert to his relatives, leaving her free to give to hers, if she chose, her expectant inheritance from her father. They evidently understood the matter alike, and she had no disposition to lessen what she. received from him by useless expenditures. When she came to make her last will she assumed only to dispose of the proceeds of her inheritance from her brother and father, leaving what remained of her husband's estate out of consideration. We are of opinion the decree herein substantially carries out the intentions of these parties, as disclosed by their wills, and that it is, therefore, responsive to the merits of the cause. It will be affirmed.